**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **GRIDLEY IP LLC,** Plaintiff, v. **DOORDASH, INC.,** Defendant. | Civil Action No.: **TRIAL BY JURY DEMANDED** |

**COMPLAINT FOR INFRINGEMENT OF PATENT**

Now comes, Plaintiff, Gridley IP LLC ("Plaintiff" or "Gridley"), by and through undersigned counsel, and respectfully alleges, states, and prays as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin Defendant Doordash, Inc. (hereinafter "Defendant"), from infringing and profiting, in an illegal and unauthorized manner, and without authorization and/or consent from Plaintiff from U.S. Patent No. 8,676,668 ("the '668 Patent") and U.S. Patent No. 9,852,435 ("the '435 Patent) (collectively the "Patents-in-Suit"), which is attached hereto as Exhibit A and Exhibit B, respectively, and incorporated herein by reference, and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

**THE PARTIES**

2. Plaintiff is a Texas limited liability company with its principal place of business at 13359 North Highway 183, Suite 406-760, Austin, TX 78750.

3. Upon information and belief, Defendant is a corporation organized under the laws of Delaware, having a principal place in San Francisco California. Defendant maintains a physical presence in this Judicial District by maintaining a Cleveland Office at 31515 Lorain Rd, North

Olmsted, OH 44070. Upon information and belief, Defendant may be served with process c/o Registered Agent Solutions, Inc., 4568 Mayfield Road, Suite 204, Cleveland, Ohio 44121.

## JURISDICTION AND VENUE

4. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1 *et seq*.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

6. This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction and its residence in this District, as well as because of the injury to Plaintiff, and the cause of action Plaintiff has risen in this District, as alleged herein.

7. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this forum state and in this judicial District; and (iii) being physically located in this District.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017) through its regular and established place of business in this District (i.e., Defendant's Cleveland Office).

## FACTUAL ALLEGATIONS

9. On March 18, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '668 Patent, entitled "METHOD FOR THE DETERMINATION OF

2

A TIME, LOCATION, AND QUALITY OF GOODS TO BE MADE AVAILABLE BASED ON MAPPED POPULATION ACTIVITY" after a full and fair examination. The '668 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

10. On December 26, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '435 Patent, entitled "TELEMETRICS BASED ON LOCATION AND TRACKING" after a full and fair examination. The '435 Patent is attached hereto as Exhibit B and incorporated herein as if fully rewritten.

11. Plaintiff is presently the owner of the '668 Patent and the '435 Patent, having received all right, title and interest in and to the '668 Patent and the '435 Patent from the previous assignee of record. Plaintiff possesses all rights of recovery under the '668 Patent and the '435 Patent, including the exclusive right to recover for past infringement.

12. To the extent required, Plaintiff has complied with all marking requirements under 35 U.S.C. § 287.

13. Claim 1 of the '668 Patent states:

> "1. A method for mapping population activity, the method comprising:
> detecting wireless mobile devices within a geographic region at two or more different points in time;
> discerning a location, speed and direction of the wireless mobile devices within the geographic region to discern a particular location toward which the wireless mobile devices are moving;
> determining, based upon the location, speed, direction and the particular location toward which the wireless mobile devices are moving:
> a time at which goods or services are to be made available;
> a location at which the goods or services are to be made available; and
> a quantity of the goods or services to be made available, the determining being performed by one or more processors of a computer network; and
> presenting a result of the determining on a user interface of the computer network.." See Exhibit A.

3

14. Claim 9 of the '435 Patent states:

> "9. An apparatus effective to track potential purchasers, the apparatus comprising:
> a memory configured to store instructions; and
> a processor configured to be in communication with the memory, wherein the processor is configured to execute the instructions to:
> detect wireless mobile devices within a geographic region at two or more different points in time;
> discern a current location, a current speed, and a current direction of travel for the wireless mobile devices within the geographic region based on the detection of the wireless mobile devices;
> identify a set of the wireless mobile devices that are estimated to be within proximity of a particular location at a specified time or specified time period, based on the current location, the current speed, and the current direction of travel for the wireless mobile devices within the geographic region;
> retrieve demographic information related to the identified set of the wireless mobile devices;
> retrieve historical information related to the identified set of the wireless mobile devices;
> identify a portion of the identified set of the wireless mobile devices based on at least one of the demographic information or the historical information, wherein the identified portion is associated with goods or services that are available proximate to the particular location at the specified time or specified time period; and
> determine a quantity of the goods or services to be made available to users associated with the identified portion of the identified set of the wireless mobile devices, so as to facilitate provision of the determined quantity of the goods or services at the particular location at the specified time or specified time period to the users.." See Exhibit B.

15. As identified in the Background Section of both the '668 Patent and the '435 Patent, prior art systems had technological faults. See Ex. A at Col 1:8-21, Ex. B at Col. 1:16-29.

16. More particularly, the Background Section of both the '668 Patent and the '435 Patent identifies that the prior art provided: "A particular problem that arises is that some customers demand prompt service or otherwise a sales opportunity may be lost. A large number

4

of businesses and other agencies provide goods and services that are valuable to consumers only when they can be provided at a proper time and place. Moreover, these goods and services may call for some advance planning immediately prior to providing the goods or services to such customers. This may be a particular problem when dealing with crowds, e.g., when large numbers of potential customers demand prompt service at a given time, and if no such service is provided, then opportunities to be a service provider may be lost." Ex. A at Col 1:10-21, Ex. B at Col. 1:18-29.

17. The Background of the '668 Patent and the '435 Patent identified computer-centric or internet-centric technological problems that needed to be solved.

18. To address this specific technical problem, Claim 1 in the '668 Patent comprises a non-abstract method for mapping population activity. Ex. A at Col. 18:17-36.

19. In further addressing this specific technical problem, Claim 9 in the '435 Patent comprises a non-abstract apparatus to track potential purchasers. Ex. B at Col. 19:52-20:20.

20. Claim 1 of the '668 Patent provides a specific solution, to deal with the vulnerability of dealing with large number of potential customers demand prompt service at a given time as the method of Claim 1 requires detecting wireless mobile devices within a geographic region at two or more different points in time; discerning a location, speed and direction of the wireless mobile devices within the geographic region to discern a particular location toward which the wireless mobile devices are moving; determining, based upon the location, speed, direction and the particular location toward which the wireless mobile devices are moving: a time at which goods or services are to be made available; a location at which the goods or services are to be made available; and a quantity of the goods or services to be made available, the determining being

performed by one or more processors of a computer network; and presenting a result of the determining on a user interface of the computer network. See Ex A at Col. 18:18-36.

21. The specific method steps of Claim 1 of the '668 Patent, as combined, accomplish the desired result of increased immunity, efficiency and optimization from dealing with large number of potential customers demand prompt service at a given time.

22. Regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the method of Claim 1 in the '668 Patent would not preempt all ways of mapping populating activity because Claim 1 requires determining, based upon the location, speed, direction and the particular location toward which the wireless mobile devices are moving: a time at which goods or services are to be made available; a location at which the goods or services are to be made available; and a quantity of the goods or services to be made available, the determining being performed by one or more processors of a computer network. Ex. A at Col.18:26-33.

23. There are other ways to effectuate the determination, based upon the location, speed, direction and the particular location toward which the wireless mobile devices are moving. Specifically, the method does not preempt all determinations because the determinations of the particularly location toward which the wireless mobile devices are moving could be based on other parameters contrary to that which is required by Claim 1 of the '668 patent.

24. Based on the foregoing assertions, Claim 1 of the '668 Patent provides a non-abstract and an unconventional inventive concept as described in the specification.

25. Claim 9 of the '435 Patent provides a specific solution, to deal with the vulnerability of dealing with large number of potential customers demand prompt service at a given time as the apparatus of Claim 9 requires a processor configured to be in communication with the memory,

wherein the processor is configured to execute the instructions to: detect wireless mobile devices within a geographic region at two or more different points in time; discern a current location, a current speed, and a current direction of travel for the wireless mobile devices within the geographic region based on the detection of the wireless mobile devices; identify a set of the wireless mobile devices that are estimated to be within proximity of a particular location at a specified time or specified time period, based on the current location, the current speed, and the current direction of travel for the wireless mobile devices within the geographic region; retrieve demographic information related to the identified set of the wireless mobile devices; retrieve historical information related to the identified set of the wireless mobile devices; identify a portion of the identified set of the wireless mobile devices based on at least one of the demographic information or the historical information, wherein the identified portion is associated with goods or services that are available proximate to the particular location at the specified time or specified time period; and determine a quantity of the goods or services to be made available to users associated with the identified portion of the identified set of the wireless mobile devices, so as to facilitate provision of the determined quantity of the goods or services at the particular location at the specified time or specified time period to the users.

26. There are other ways to effectuate the identification of a portion of the identified set of the wireless mobile devices based on at least one of the demographic information or the historical information, wherein the identified portion is associated with goods or services that are available proximate to the particular location at the specified time or specified time period; and the determination of a quantity of the goods or services to be made available to users associated with the identified portion of the identified set of the wireless mobile devices, so as to facilitate provision of the determined quantity of the goods or services at the particular location at the

specified time or specified time period to the users. Specifically, the method does not preempt all determinations because the determinations of the particularly location toward which the wireless mobile devices are moving could be based on other parameters contrary to that which is required by Claim 1 of the '668 patent.

27. The apparatus of Claim 9 of the '435 Patent accomplishes the desired result of increased immunity, efficiency and optimization for dealing with large number of potential customers demand prompt service at a given time.

28. Specifically, the elements Claim 1 of the '668 Patent, <u>as combined</u>, and the elements of Claim 9 of the '435 Patent, <u>as combined</u>, accomplish the desired result of increased immunity, efficiency and optimization from dealing with large number of potential customers demand prompt service at a given time. Further, these specific elements also accomplish these desired results to overcome the then existing problems in the relevant field of network communication systems. *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that improving computer security can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem). See also *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. April 30, 2020).

29. Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020)

30. These specific elements of elements Claim 1 of the '668 Patent and the elements of Claim 9 of the '435 Patent were each an unconventional arrangement of elements because the prior

art methodologies that were each able to unconventionally generate a manner for dealing with large amounts of potential customers. *Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019)

31. Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, Claim 1 of the '668 Patent and Claim 9 of the '435 Patent provides patent eligible subject matter that would not preempt all ways of dealing with large amounts of potential customers, any of the particular claims requirements could be removed or performed differently to permit a method of dealing with large amounts of potential customers in a different way. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); See also *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014)

32. Based on the allegations, it must be accepted as true at this stage, Claim 1 of the '668 Patent and Claim 9 of the '435 Patent recite a specific, plausibly inventive way of dealing with large amounts of potential customers. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020).

33. Alternatively, there is at least a question of fact that must survive the pleading stage as to whether Claim 1 of the '668 Patent and Claim 9 of the '435 Patent were an unconventional arrangement of elements. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) See also *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911, 205 L. Ed. 2d 454 (2020).

34. The Defendant commercializes, inter alia, methods that perform all the steps recited in at least one claim of the Patents-in-suit. More particularly, Defendant commercializes, inter alia,

9

methods that perform all the steps recited in Claim 1 of the '668 Patent and Claim 9 of the '435 Patent. Specifically, Defendant makes, uses, sells, offers for sale, or imports a method performed by the Accused Product, defined below, that encompasses that which is covered by Claim 1 of the '668 Patent and Claim 9 of the '435 Patent.

### DEFENDANT'S PRODUCT(S)

35. The Defendant offers solutions, such as the "Doordash App" system (the "Accused Product"), that enables a method for mapping population activity. For example, the Accused Product performs the method for mapping population activity (e.g. searching for dashers). A non-limiting and exemplary claim chart comparing the Accused Product of Claim 1 of the '668 Patent is attached hereto as Exhibit C and is incorporated herein as if fully rewritten.

36. As recited in Claim 1, a system, at least in internal testing and usage, utilized by the Accused Product practices detecting wireless mobile devices (e.g., the mobile devices used by dashers) within a geographic region at two or more different points in time (e.g., the app will continuously track and update dasher locations over time). See Exhibit C.

37. As recited in one step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Product practices discerning a location, speed and direction of the wireless mobile devices (e.g., the app will determine the location, speed and direction of various dashers so that said information can be displayed on the user's device and so that pick up times can be estimated) within the geographic region to discern a particular location toward which the wireless mobile devices are moving. See Exhibit C. The accused product based on speed, location and direction has calculated a possible time required to reach a particular pickup location. The parameters calculated are also based on the direction in which the wireless mobile devices (e.g., dashers with wireless mobile device) are headed.

38. As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Product utilizes the location, speed, direction and the particular location toward which the wireless mobile devices are moving (e.g., dashers with their mobile devices). See Exhibit C. The Accused Product based on speed, location and direction has calculated a possible time required to reach a particular pickup location. The parameters calculated are also based on the direction in which the wireless mobile devices (e.g., dashers with wireless mobile device) are headed. For example, if a user (e.g., passenger) wants to book a delivery, dashers heading in that direction are more likely to be booked.

39. As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Product utilizes the location, speed, direction and the particular location toward which the wireless mobile devices are moving (e.g., dashers with their mobile devices) to determine a time (e.g., an estimated travel of arrival) at which goods or services (e.g., a delivery) are to be made available. See Exhibit C.

40. As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Product utilizes the location, speed, direction and the particular location toward which the wireless mobile devices are moving (e.g., dashers with their mobile devices) to determine a location at which the goods or services (e.g., delivery as a service) are to be made available (e.g., a delivery location and time of pickup). See Exhibit C.

41. As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Product utilizes the location, speed, direction, and the particular location toward which the wireless mobile devices are moving (e.g., dashers with their mobile devices) to determine a quantity of the goods or services (e.g., delivery date, time, etc.) to be made

available, the determining being performed by one or more processors of a computer network (e.g., a smartphone). See Exhibit C.

42. As recited in another step of Claim 1, the system, at least in internal testing and usage, utilized by the Accused Product practices presenting a result of the determining (e.g. an estimated time of arrival, a delivery location etc.) on a user interface of the computer network (e.g. a smartphone).

43. The elements described in the preceding paragraphs are covered by at least Claim 1 of the '668 Patent. Thus, Defendant's use of the Accused Product is enabled by the method described in the '668 Patent.

44. The Accused Product is an apparatus effective to track potential purchasers, the apparatus.  A non-limiting and exemplary claim chart comparing the Accused Product of Claim 9 of the '435 Patent is attached hereto as Exhibit D and is incorporated herein as if fully rewritten.

45. As recited in Claim 9, a system, at least in internal testing and usage, utilized by the Accused Product makes use of a memory configured to store instruction (e.g. a smartphone with memory unit).  See Exhibit D.

46. As recited in one part of Claim 9, the system, at least in internal testing and usage, utilized by the Accused Product makes use of a processor configured to be in communication with the memory, wherein the processor is configured to execute the instructions (e.g. a smartphone with a processor). See Exhibit D.

47. As recited in another part of Claim 9, the system, at least in internal testing and usage, utilized by the Accused Product practices detecting wireless mobile devices (e.g., the mobile devices used by dashers) within a geographic region at two or more different points in time (e.g., the app will continuously track and update dasher locations over time). Additionally, a user

(e.g., a passenger) can request or book another vehicle once a first delivery has ended. Thus, a user's mobile device starts detecting other dasher vehicles (e.g., via a dasher's wireless mobile device) at different points of time. See Exhibit D.

48. As recited in another part of Claim 9, the system, at least in internal testing and usage, utilized by the Accused Product practices discerning a location, speed and direction of the wireless mobile devices within the geographic region to discern a particular location toward which the wireless mobile devices are moving. The Accused Product utilizes the location, speed, direction and the particular location toward which the wireless mobile devices are moving (e.g., dashers with their mobile devices) to determine a time (e.g., an estimated travel time of arrival) at which goods or services (e.g., a delivery/drop off) are to be made available. See Exhibit D.

49. As recited in another part of Claim 9, the system, at least in internal testing and usage, utilized by the Accused Product practices identifying a set of the wireless mobile devices (e.g., dashers with wireless mobile device that are within the area of a user) that are estimated to be within proximity of a particular location at a specified time or specified time period, based on the current location, the current speed, and the current direction of travel for the wireless mobile devices within the geographic region (e.g., based on a particular dashers current location, speed, and heading, an estimated pickup time at a particular location can be determined). See Exhibit D.

50. As recited in another part of Claim 9, the system, at least in internal testing and usage, utilized by the Accused Product practices retrieving demographic information (e.g., the app can pull dasher names and pictures) related to the identified set of the wireless mobile devices (e.g., dashers with wireless mobile devices). See Exhibit D.

51. As recited in another part of Claim 9, the system, at least in internal testing and usage, utilized by the Accused Product practices retrieving historical information (e.g., vehicle

type, license plate number, reviews, etc.) related to the identified set of the wireless mobile devices (e.g., vehicles with wireless mobile device). See Exhibit D.

52. As recited in another part of Claim 9, the system, at least in internal testing and usage, utilized by the Accused Product practices identifying a portion of the identified set of the wireless mobile devices (e.g. dashers with wireless mobile devices) based on at least one of the demographic information or the historical information (e.g. dasher's name, reviews, vehicle type, license plate number, age, etc.), wherein the identified portion is associated with goods or services (e.g. a delivery as a service) that are available proximate to the particular location at the specified time or specified time period. See Exhibit D. Namely, when a user tries to book a delivery, the accused product shows the available vehicle based on the availability, current location, current time, etc.

53. As recited in another step of Claim 9, the system, at least in internal testing and usage, utilized by the Accused Product practices determining a quantity of the goods or services (e.g. delivery distance/ pick up location) to be made available to users associated with the identified portion of the identified set of the wireless mobile devices (e.g. users that are associated with nearby dashers), so as to facilitate provision of the determined quantity of the goods or services (e.g. a delivery with a particular distance) at the particular location at the specified time or specified time period to the users (e.g. delivery pickup at a particular location at a particular time). See Exhibit D.

54. The elements described in the preceding paragraphs are covered by at least Claim 9 of the '435 Patent. Thus, Defendant's use of the Accused Product is enabled by the method described in the '435 Patent.

## INFRINGEMENT OF THE PATENTS-IN-SUIT

55. Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs

56. In violation of 35 U.S.C. § 271, the Accused Product of the Defendant is now, and has been directly infringing the '668 Patent and the '435 Patent.

57. Defendant has had knowledge of infringement of the '668 Patent and the '435 Patent at least as of the service of the present Complaint.

58. Defendant has directly infringed and continues to directly infringe at least one claim of the '668 Patent and the '435 Patent by using, at least through internal testing or otherwise, the Accused Product without authority in the United States, and will continue to do so unless enjoined by this Court. As a direct and proximate result of Defendant's direct infringement of the '668 Patent and the '435 Patent, Plaintiff has been and continues to be damaged.

59. Defendant has induced others to infringe the '668 Patent and the '435 Patent by encouraging infringement, knowing that the acts Defendant induced constituted patent infringement, and its encouraging acts actually resulted in direct patent infringement.

60. By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '668 Patent and the '435 Patent, pursuant to 35 U.S.C. § 271.

61. Defendant has committed these acts of infringement without license or authorization.

62. As a result of Defendant's infringement of the '668 Patent and the '435 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

63. Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

64. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint. The claim chart depicted in Exhibit C and Exhibit D is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

65. Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. That Defendant be adjudged to have directly infringed the '668 Patent and the '435 Patent either literally or under the doctrine of equivalents;

b. An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

c. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly infringing the '668 Patent and the '435 Patent;

d. An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

e. An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

f. That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

g. That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: March 30, 2021

Respectfully submitted,

SAND, SEBOLT & WERNOW CO., LPA

*/s/ Howard L. Wernow*
Howard L. Wernow (SBN 0089019)
Aegis Tower – Suite 1100
4940 Munson Street NW
Canton, Ohio 44718
Telephone: (330) 244-1174
Facsimile: (330) 244-1173
Howard.Wernow@sswip.com

ATTORNEY FOR PLAINTIFF